# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JEAN GERMAIN | * |
| Plaintiff | * |
| v | *   Civil Action No. JFM-12-2913 |
| COMM. J. MICHAEL STOUFFER, et al. | * |
| Defendants | * |

## MEMORANDUM

Pending are defendants' motion to dismiss or for summary judgment (ECF No. 22) and plaintiff's response in opposition (ECF No. 34). Plaintiff has also filed a motion for leave to file a response outside the time (ECF No. 32); in light of the receipt of his response in opposition, the motion will be granted. A hearing is unnecessary to the resolution of the matters pending before the court. *See* Local Rule 105.6 (D. Md. 2011).

Plaintiff also filed a motion to introduce new evidence alleging an administrative remedy procedure (ARP) request he filed regarding his inability to make ablution was not investigated properly and was dismissed after he was told to provide information that does not exist. ECF No. 35. The claim is unrelated to the claims pending in this case and the motion shall be denied. To the extent plaintiff is asserting a denial of his First Amendment right to practice his religion, he remains free to file a separate complaint alleging same.

## Background

Plaintiff alleges he filed an administrative grievance concerning the failure by prison staff at North Branch Correctional Institution (NBCI) to send a complaint to the Inmate Grievance Office (IGO) on December 29, 2009, despite plaintiff paying the required postage from his inmate account. ECF No. 1 at pp. 3 – 4. After a hearing on the matter, plaintiff's grievance

regarding the non-delivery of his legal mail was found meritorious by an Administrative Law Judge (ALJ) and the Division of Correction was ordered to conduct an investigation into the mail handling practices at NBCI. *Id*. at p. 4 and Ex. 1.

Plaintiff claims that despite his complaints regarding the mail, problems persist. He states that on June 10, 2012, he mailed a petition for judicial review to the Circuit Court for Allegany County, but learned on August 30, 2012, after inquiring about the status of his case, that the petition was never received by the court. ECF No. 1 at p. 4 and Ex. 3 and 4.

On September 12, 2012, plaintiff received an order from the Circuit Court for Baltimore City changing venue to Allegany County and indicating that plaintiff had failed to respond to a motion for change of venue. Plaintiff claims he filed a response to the motion and mailed it to the court on August 7, 2012, but it never reached the court. He states that NBCI mail room staff improperly declined to mail the pleading because he was not eligible for "NF" (indigency) mailing. ECF No. 1 at p. 5 and Ex. 6. On September 13, 2012, plaintiff received a motion to dismiss the appeal from the Assistant Attorney General claiming plaintiff had never served him with a copy of his memorandum pursuant to Md. Rule 7-207.

In *Germain v. Oakley*, Civil Case No. 01-C-11-36486, the Circuit Court for Allegany County issued a decision granting summary judgment "to the IGO" which plaintiff received on August 15, 2012. ECF No. 1 at p. 5. On September 13, 2012, plaintiff mailed an application for leave to appeal with the Maryland Court of Special Appeals. Plaintiff claims his mail was not processed by the mail room until September 17, 2012, and was intentionally sent with insufficient postage so it was returned. Plaintiff asserts he was thereby deprived of his opportunity to appeal his case. *Id*. at p. 6.

Plaintiff states that on August 22, 2012, he submitted an administrative remedy procedure request (ARP) regarding his complaint about the non-delivery and delay in sending his mail out. The ARP was dismissed by defendant Brad Wilt because he wanted plaintiff to "provide evidence that he knew plaintiff [did] not have and cannot obtain." ECF No. 1 at p. 6 and Ex. 9. On August 27, 2012, plaintiff appealed Wilt's decision to the Commissioner of Correction, but the appeal was denied on September 7, 2012. *Id*. at pp. 6 – 7. Plaintiff claims he has submitted other more urgent complaints that Wilt continues to arbitrarily dismiss. *Id*. at p. 7; and Ex. 11 – 14.

In his amended complaint, plaintiff claims the failure to mail his IGO complaint in December of 2009 deprived him of the ability to exhaust administrative remedies as required under state law in order to file a claim under the Maryland Tort Claim Act. Plaintiff asserts he was, thus, denied an opportunity to seek redress for lost property. He further claims that because his petition was not mailed to the Circuit Court for Allegany County on June 10, 2012, he was denied the ability to challenge a policy at NBCI which requires inmates placed on lock-up to forfeit all food items and, if the segregation is longer than 180 days, to forfeit all property. Additionally, plaintiff claims that Wilt's failure to respond to this ARP regarding the mailroom, the staff in the mailroom "got bolder and intentionally did not place appropriate postage on plaintiff's mail" when he was trying to file a timely application for leave to appeal. Plaintiff claims in the civil action where summary judgment was granted in favor of the IGO, he was seeking declaratory judgment against Scott Oakley "to allow plaintiff to sue for damages afterwards in state courts." ECF No. 4 at pp. 1 - 3.

Defendants assert the legal mail log maintained by NBCI to record when prisoners are given legal mail shows plaintiff received at least one hundred pieces of legal mail from May

through September of 2012. ECF No. 22 at Ex. 2. Additionally, defendants assert that plaintiff filed fourteen cases in the period from March 2012 through September 2012, in addition to other cases that were open at the time. *Id* at Ex. 3.

With respect to claims affected by plaintiff's allegation that his mail was not properly handled, defendants assert that plaintiff has not provided evidence to substantiate his claims, or that the alleged failures to deliver mail had no adverse consequence to the cases he filed. ECF No. 22. Specifically, defendants state that plaintiff claimed to attempt to file an opposition to a change of venue on August 7, 2012, and was informed at that time he was eligible for "NF" mailing as of August 16, 2012, so long as he did not put additional funds into his account. *Id*. at Ex. 1, p. 18. The case that was transferred to Allegany County Circuit Court continued until December of 2012, when it was decided. *Id*. at Ex. 4, pp. 3 – 5. Thus, the change of venue was not dispositive of the case. Rather, the case was dismissed because of plaintiff's failure to serve the Attorney General's office with his supporting memorandum, and defendants state that plaintiff has provided no evidence that he attempted to mail a copy of his memorandum to opposing counsel. *Id*. at Ex. 1, p. 19. Plaintiff did however, file a petition for judicial review, a motion for waiver of the filing fee, a banking statement, and an answer to the motion to dismiss with the Circuit Court considering the case. *Id*. at Ex. 5.

Defendants state that in the appeal plaintiff claims was delayed, in Case No. 01C1136486, summary judgment was granted on August 2, 2012. Plaintiff alleges he attempted to mail an application for leave to appeal to the Court of Special Appeals on September 13, 2012, and that it was delayed until September 17, 2012. However, the application was docketed December 4, 2012, and the record of the case was mailed to the appellate court on February 4, 2013. ECF No. 22 at Ex. 6.

## Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

### Access to Courts

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997), quoting *Lewis*, 518 U.S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id*. at 352-352.

In *Christopher v. Harbury*, 536 U.S. 403, 415 (2002), the Court characterized access-to-the courts claims as being in one of two categories. *Id* at 413. The first, termed "forward looking claims," are cases where official action frustrates a plaintiff's ability to bring a suit at the present time. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1208-09 (10th Cir. 2004). The second class, termed "backward looking claims," arise when a Plaintiff alleges that a specific

claim "cannot be tried (or tried with all the evidence) [because past official action] caused the loss or inadequate settlement of a meritorious case." *Id*. at 1209. In this way, the official action is said to have "'rendered hollow [the plaintiff's] right to seek redress'" in the courts. *Id*. (quoting *Christopher*, 536 U.S. at 415 (brackets in original) (internal citations omitted)).

Whether the claim is forward or backward looking, a prisoner claiming he was denied access to the courts must ultimately prove he suffered an actual injury by showing that the defendant's acts hindered his ability to pursue a non-frivolous legal claim. Conclusory allegations are not sufficient in this regard. *See Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006)(denying access to court claim based on allegation that petition for a writ of certiorari had, for unspecified reasons, been dismissed and where plaintiff did not even mention the point on appeal). The right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher*, 536 U.S. at 415.

Plaintiff's assertion that venue was changed from Baltimore City to Allegany County because the court did not receive his opposition to the motion is without merit. Even assuming the opposition was misdirected or otherwise improperly handled, there is no evidence that plaintiff's opposition would have convinced the court not to change the venue in the case or that it affected the outcome of the case. Indeed, the case proceeded with respondents filing a motion for summary disposition and plaintiff opposing the motion before the case was dismissed. ECF No. 22 at Ex. 4; *In the Matter of the Petition of Jean Germain*, Case No. 01C12037995 (Cir. Ct. Allegany Co.).

Defendants state, and plaintiff does not dispute, that during the period plaintiff alleges three pieces of legal mail were not properly handled, he had fourteen cases pending and received over 100 pieces of legal mail. ECF No. 22. Plaintiff asserts that because the ALJ found that

7

there was no investigation conducted into one piece of mail that was not delivered, the Commissioner of Correction and the Warden are liable. This claim is without merit in light of the volume of mail processed on plaintiff's behalf. It strains the limits of reason to assume that three missing items among the numerous pieces of mail sent out by plaintiff is of constitutional significance. This court is familiar with plaintiff's prolific filings; in this case alone plaintiff has filed thirteen motions, two of which are accompanied by more than 100 pages of exhibits. ECF No. 4, 9, 10, 13, 17, 20, 25, 26, 27, 30, 31, 32, and 35.

Notwithstanding plaintiff's litigious proclivities, his claims regarding the missing pleadings fall within the purview of a desire to turn himself into "a litigation engine . . . capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis*, 518 U. S. at 355. His assertion that he is denied the opportunity to seek recompense for his property, consisting of food purchased from the commissary which was confiscated because he was placed on disciplinary segregation, is not the sort of claim prisoners are guaranteed a right to pursue. To the extent plaintiff attempts to raise a claim regarding the wisdom of the property policy for prisoners assigned to disciplinary segregation, the law is well settled that prisoners do not have a due process right to property.[1] Thus, plaintiff's assertion that there is a genuine dispute of fact regarding whether his property remains in storage (ECF No. 34 at p. 24) is not material to the disposition of the claim. Moreover, a prison policy of discarding perishable food that is not permitted on disciplinary segregation serves a legitimate penological purpose.[2]

---

[1] *See Parratt v. Taylor*, 451 U. S. 527, 542-44 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U. S. 327 (1986).

[2] *See Bannan v. Angelone*, 962 F. Supp. 71, 73-4 (W. D. Va. 1996) (unless other rights such as religion or speech are involved, jails may constitutionally disallow possession of personal property).

Plaintiff's assertion that the internal prison policy requiring inmates to provide documentation in support of administrative remedy procedure requests deprives them of access to the courts because it thwarts their ability to exhaust administrative remedies as a precursor to filing a lawsuit is without merit. The failure to exhaust administrative remedies is an affirmative defense which must be raised by defendants.[3] *See Anderson v. XYZ Correctional Health Services, Inc.*, 407 F. 3d 674, 682 (4th Cir. 2005). A prisoner may rebut the defense with evidence that the administrative remedy procedure was unavailable to him. *See id.* (exhaustion thwarted by refusal or misconduct by prison officials is rebuttal evidence); *see also Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008) (prisoners must have utilized all available remedies in accordance with procedural rules and must not have been prevented from doing so by prison officials). To the extent a request for supporting documentation of a claim is unreasonable or unduly onerous and results in the summary dismissal of a meritorious claim, the remedy procedure is likely "unavailable" and exhaustion may be excused. To the extent that exhaustion of administrative remedies is required for negligence claims that do not raise constitutional claims, there is no injury to the ability to access the courts to challenge the conditions of confinement or the validity of a conviction.

**Due Process Claim**

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (*citing Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an

---

[3] This court declines to adopt defendants' position that prisoners have no right of access to the administrative remedy procedure. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) (interpreting exhaustion requirement to encompass "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").

inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564-571. There is no constitutional right to confront and cross-examine witnesses or to retain or be appointed counsel. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 505-06 (4th Cir.2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 323 n. 5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F.Supp. 1371, 1376 (E.D.Va.1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir.1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

The merits of plaintiff's claim regarding his disciplinary proceedings are unavailing. Plaintiff claims the disciplinary proceedings wherein he was found guilty of having a weapon in his cell, denied his due process rights because the hearing officer was biased, and was not allowed to review a video tape of the cell search or to present evidence favorable to his defense.

10

ECF No. 34 at pp. 24 – 30. Plaintiff's assertion regarding the hearing officer's alleged bias is founded mainly on the fact that the hearing officer chose to believe the testimony of the officer who found the knife inside plaintiff's cell, as well as the written report, over plaintiff's testimony. *Id*. at p. 29. Plaintiff claims the report contained deceptive statements because Corporal Kerling testified at the hearing and admitted he found the knife when inspecting the toilet in plaintiff's cell, and showed what he found to Corporal Whetstone, who recovered the knife. *Id*. at p. 26. Plaintiff asserts this testimony disputes the assertion in the report that Whetsone found the knife. *Id*. The alleged discrepancy does not impact on the ultimate fact that the knife was found in plaintiff's cell. The fact that the hearing officer chose to believe the reporting officers and did not believe plaintiff or his witness that no one left plaintiff's cell with a knife after the search, is not evidence of bias. Rather, it is the function of any trier of fact to discern which testimony is credible and which is not. Thus, the conclusions of the hearing officer were not arbitrary and capricious, nor unsupported by the evidence.

Plaintiff's claim that denying him the opportunity to present video from the housing unit that captured the cell search denied both his due process rights and his rights under *Brady v. Maryland* is without merit. ECF No. 34 at pp.29 – 32. Plaintiff's right to present evidence in a prison disciplinary proceeding is limited and permitted when doing so is not inconsistent with institutional safety and correctional concerns. Plaintiff's demand that surveillance video be reviewed to establish that no one left his cell with a knife, was justifiably denied. Even if the video surveillance did not clearly show officers leaving plaintiff's cell with the knife, it does not necessarily mean there was no knife found. Securing the knife prior to leaving the cell would have concealed it from the camera's view. Additionally, plaintiff's assertion regarding the

11

discrepancy in the report and testimony is an insufficient basis to demand the production of the video as the asserted discrepancy did not affect the overall validity of the report.

## Miscellaneous Claims

To the extent plaintiff raises other state law claims, they shall be dismissed. A federal court may decline to exercise supplemental jurisdiction over state law claims where it has dismissed the federal claim. 28 U.S.C. § 1367(c). When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction. *See Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

A separate order follows.

 June 5, 2013                                                                                               /s/
Date                                                                                                J. Frederick Motz
                                                                                               United States District Judge